**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No.  08-31832

DAVID W. OLIVER

        Debtor


        N. DAVID ROBERTS, JR., TRUSTEE

                Plaintiff

        v.

Adv. Proc. No.  08-3129

DAVID W. OLIVER

                Defendant


**MEMORANDUM ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DEFENDANT'S MOTION TO STRIKE**


**APPEARANCES:**    N. DAVID ROBERTS, JR., ESQ.
                Post Office Box 2564
                Knoxville, Tennessee 37901
                Attorney for Plaintiff

                MOORE & BROOKS
                Brenda G. Brooks, Esq.
                6207 Highland Place Way
                Suite 203
                Knoxville, Tennessee  37919
                Attorneys for Defendant/Debtor


**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff on September 22, 2008, objecting to the Defendant's discharge under 11 U.S.C. § 727(a)(2)(A) and (4)(A) (2006). The Defendant did not file a responsive pleading; instead, on November 6, 2008, he filed the Defendant's Motion for Summary Judgment (Motion for Summary Judgment), accompanied by his brief and Statement of Undisputed Facts in Support of Motion for Summary Judgment required by E.D. Tenn. LBR 7056-1, as amended on December 11, 2008 (Defendant's Statement of Undisputed Material Facts).   Also filed in support of the Motion for Summary Judgment were the following exhibits: (1) the Defendant's statements and schedules filed in his Chapter 7 bankruptcy case; (2) the November 6, 2008 Affidavit of Brenda G. Brooks, with the following attachments: (A) a letter from Ms. Brooks to the Plaintiff dated July 25, 2008; (B) a July 16, 2008 letter from Ms. Brooks to the Plaintiff; (C) a payoff statement as of June 27, 2008, from Countrywide Bank for a loan secured by real property located at 9844 Kristi Drive, Knoxville, Tennessee;   (D) invoices from Betty Kay Reynolds, P.C., a certified public accountant, dated June 30, 2007, and March 10, 2008; and (E) Customer Ledgers from Reynolds Piper & Associates, PC, evidencing payments received between January 1, 2006, to December 31, 2008, from Conlogue-Oliver, LLC and the Defendant; (3) the October 29, 2008 Affidavit of the Defendant; and (4) the October 30, 2008 Affidavit of Mariah Byrd.

In compliance with E.D. Tenn. LBR 7056-1(b), the Plaintiff filed his Response to Defendant's Statement of Undisputed Material Facts and his Statement of Additional Undisputed Material Facts (Plaintiff's Statement of Undisputed Material Facts) on December 15, 2008.[1]   In

---

[1] The Plaintiff did not, however, comply with E.D. Tenn. LBR 7007-1(a), which provides, in material part:

(continued...)

support of his position, the Plaintiff also filed the following:  (1) the partial transcript of the Rule

2004 Examination of the Defendant taken September 9, 2008; (2) the partial transcript of the Rule

2004 examination of Aaron M. Householder taken September 9, 2008,[2] and (3) the October 29, 2008

Affidavit of the Plaintiff, accompanied by fifteen exhibits marked Exhibits A through O.

On January 6, 2009, the Defendant filed a Response to Plaintiff's Statement of Additional

Undisputed Facts and the Defendant's Motion to Strike (Motion to Strike), seeking to strike or quash

portions of the Plaintiff's Affidavit, Exhibits I, J, K, L, M, N, and O thereto, and the transcript of Mr.

Householder's Rule 2004 examination.  The Plaintiff filed his Response to Defendant's Motion to

Strike (Response to Motion to Strike) on January 7, 2009.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(J) (2006).

---

[1](...continued)

> Unless the court directs otherwise, the opposing party [to a motion filed in an adversary proceeding]
> must file a response within 20 days after the date of filing of the motion.  Any response must be
> supported by a brief setting forth the facts and the law in opposition to the motion.  A failure to
> respond timely will be construed to mean that the respondent does not oppose the relief requested by
> the motion.

E.D. Tenn. LBR 7007-1(a).  The filing of the Trustee's Brief in Opposition to Defendant's Motion to Dismiss or for
Summary Judgment did not constitute a response as contemplated by the Local Rules.  Nevertheless, this deficiency does
not affect the overall disposition of the Motion for Summary Judgment.

[2] Although designated by the court reporter as "Deposition of David W. Oliver" and "Deposition of Aaron M.
Householder," these transcripts are of the examinations taken by Order of the court prior to the commencement of this
adversary proceeding pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure.  The distinction between
a Rule 2004 examination and the discovery procedure mandated by the Federal Rules of Civil Procedure will be
discussed *infra* in this Memorandum.

# I

Rule 56, made applicable in bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986), and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S. Ct. at 2512.

"[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,]" *Anderson*, 106 S. Ct. at 2510, and the Defendant, as the moving party, bears the initial burden of proof that there are no genuine issues of material fact, such that he is entitled to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). Thereafter, the burden shifts to the Plaintiff, as the nonmoving party, to provide sufficient proof of a genuine issue for trial through the use of affidavits or other evidence and not merely through reliance upon the allegations or denials contained in the pleadings. Fed. R. Civ. P. 56(e)(2); *see also Matsushita*, 106 S. Ct. at 1356; *Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Reliance upon a "mere scintilla of evidence in support of

4

the non-moving party is insufficient[,]" *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006), and any affidavits filed in support of or in opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated[ and i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." FED. R. CIV. P. 56(e)(1). "These requirements are mandatory[, and an] affidavit that does not satisfy the requirements of Rule 56(e) is subject to a motion to strike." *Collazos-Cruz v. United States*, 117 F.3d 1420 (table), 1997 U.S. App. LEXIS 17196, at *6-7, 1997 WL 377037, at *2 (6th Cir. 1997).

In opposition to the Motion for Summary Judgment, the Plaintiff filed an Affidavit with fifteen exhibits appended thereto. In his Motion to Strike, the Defendant seeks to strike or quash specific portions of the Plaintiff's Affidavit, Exhibits I, J, K, L, M, N, and O thereto, and the transcript of Mr. Householder's Rule 2004 examination, arguing that the Affidavit does not properly authenticate those specific exhibits, thereby rendering the Plaintiff's reliance thereon inadmissible hearsay, and that Mr. Householder's testimony from his Rule 2004 examination is additionally inadmissible hearsay. In support of his arguments, the Defendant cites to and relies upon Rule 56(e) and its requirement that any documents attached to an affidavit in a support of summary judgment motion be sworn or certified, as well as Rule 801 of the Federal Rules of Evidence which states as follows:

(a) **Statement**. A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.

(b) **Declarant**. A "declarant" is a person who makes a statement.

5

(c) **Hearsay**.  "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

(d) **Statements which are not hearsay**.  A statement is not hearsay if—

(1) **Prior statement by witness**.  The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person; or

(2) **Admission by party-opponent**.  The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.  The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

FED. R. EVID. 801.

The Plaintiff, in his Response to Motion to Strike, asserts that the averments in his Affidavit and the disputed exhibits are not inadmissible hearsay, relying upon the following subsections to Rule 803 of the Federal Rules of Evidence, which provides that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

6

(6) **Records of Regularly Conducted Activity**.— A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

. . . .

(8) **Public records and reports**. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

. . . .

(15) **Statements in documents affecting an interest in property**. A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

FED. R. EVID. 803. Based upon the foregoing, the Plaintiff argues that the Defendant's objection to his Affidavit and the exhibits thereto has been made in bad faith because the Defendant duly "executed the documents," which are public records.

"To be admissible in summary judgment, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) of the Federal Rules of Civil Procedure."

7

*King v. Ohio*, 2009 U.S. Dist. LEXIS 1214, at *64, 2009 WL 73875, at *22 (S.D. Ohio Jan. 8, 2009).[3]  "Upon a party's objection, documents filed in support of or in opposition to a motion may not be considered by the court unless they have entered 'the record as attachments to an appropriate affidavit' and 'would be admissible in evidence.'"  *In re Taylor & Assocs., L.P.*, 191 B.R. 374, 382 (Bankr. E.D. Tenn. 1996) (quoting *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 89 (6th Cir. 1996)); *see also Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993) ("This court has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded.").  The Plaintiff states in his Affidavit that "Exhibits I, J, K, L, M, N, and O were all documents obtained by me pursuant to a motion for a Rule 2004 examination and order and subsequent subpoena served upon Skyline Title and Escrow. Skyline Title and Escrow provided the documents from the subpoena issued to them for their records."  ROBERTS AFF. at ¶ 8.  These records are not, however, authenticated as required by Rule 56(e)(1).  Moreover, these records do not fall within any of the hearsay exceptions relied upon by the Plaintiff, and as such, Exhibits I, J, K, L, M, N, and O to the Plaintiff's Affidavit, as well as paragraph 8 to his Affidavit introducing these documents, shall be stricken.

With respect to the Plaintiff's specific arguments, Rule 803(6) does not allow admissibility of the documents because they are not the types of documents kept by the Plaintiff in the course of his regularly conducted business activity, and he has not provided a proper foundation for their

---

[3] Authenticity is a "condition precedent to admissibility[,]" FED. R. EVID. 901(a), and a party must provide the court with "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." FED. R. EVID. 901(b)(7).  Nevertheless, such documents may be self-authenticated if they are "certified as correct by the custodian or other person authorized to make the certification[.]" FED. R. EVID. 902(4).

admissibility as required by Rule 902(11).[4]  *See Chao v. Lexington Healthcare Group, Inc. (In re Lexington Healthcare Group, Inc.)*, 335 B.R. 570, 574 (D. Del. 2005) ("While the receiver is the custodian of the Debtors' records, it is not the custodian of the records of the Debtors' payroll company or Nationwide.  Those records have not been authenticated.  The affiant's testimony about the contents of those records is, therefore, inadmissible hearsay." (internal citation omitted)).

Likewise, the documents do not fall within the scope of Rule 803(8), which applies only to documents created by a public office or agency.  *See In re Harmony Holdings, LLC*, 393 B.R. 409, 414 (Bankr. D.S.C. 2008) ("[T]o fit the exception the record must have been authored by a public office or agency. . . . The mere fact that a document is filed with the Court does not bolster its reliability.").  Finally, Rule 803(15) is not applicable because it allows statements within a document concerning a property interest to be excepted from the hearsay rule; however, when the actual document is not excepted, any statements contained therein cannot be excepted.  *See Silverstein v. Chase*, 260 F.3d 142, 149 (2d Cir. 2001) ("The requirements for admissibility under Rule 803(15) are that the document is authenticated and trustworthy, that it affects an interest in property, and that the dealings with the property since the document was made have been consistent with the truth of the statement.").

The following exhibits to the Plaintiff's Affidavit, to which no objections have been raised, are part of the record and have been considered by the court in the resolution of the Motion for

---

[4] In order to be authenticated and admissible under Rule 803(6), a "domestic record of regularly conducted activity" must be  "accompanied by a written declaration of its custodian or other qualified person" and certify that the record was drafted at or near the time of the matters set forth therein by "a person with knowledge of those matters," that the record "was kept in the course of the regularly conducted activity," and the record "was made by the regularly conducted activity as a regular practice."  FED. R. EVID. 902(11).

Summary Judgment:  (A) a form letter to debtors from the Plaintiff concerning the Defendant's duties; (B) the transcript of the Defendant's meeting of creditors held on May 23, 2008; (C) the docket report for the Defendant's bankruptcy case as of December 15, 2008; (D) the information of record in the Office of the Tennessee Secretary of State for Conlogue-Oliver-Householder Quality Properties, LLC as of December 15, 2008; (E) bank account information provided to the Plaintiff by the Defendant; (F) the SunTrust Bank statement dated January 22, 2008, for the Defendant's individual checking account; (G) the SunTrust Bank statement dated January 11, 2008, for the Defendant's joint checking account with Aaron M. Householder; and (H) Part III of Form 4797 (2007) and related attachments, including the Defendant's Federal Depreciation Schedule and Summary of Gains as of December 31, 2007.

With respect to Mr. Householder's testimony at his Rule 2004 examination, the Plaintiff argues that Rule 804 of the Federal Rules of Evidence, which provides an exception to the hearsay rule based upon a witness's unavailability, is applicable since the oral testimony is not given in summary judgment proceedings and since the Defendant and his counsel were present at Mr. Householder's examination and had the opportunity to cross-examine him at that time.  The court disagrees.

In an adversary proceeding, discovery is governed by Rules 26 through 37 of the Federal Rules of Civil Procedure, incorporated into Rules 7026 through 7037 of the Federal Rules of Bankruptcy Procedure.  More specifically, oral testimony is taken by deposition pursuant to Rule 30 of the Federal Rules of Civil Procedure and its admissibility is governed by Rule 32.  Because a Rule 2004 examination is not a deposition, Mr. Householder's testimony will not be admitted into

10

evidence for purposes of the Motion for Summary Judgment.  Accordingly, no portion of that Rule

2004 transcript will be considered.  *See In re Enron Corp.*, 281 B.R. 836, 840-42 (Bankr. S.D. N.Y.

2002) (Contrasting the "broad and unfettered . . . fishing expeditions" allowed under Bankruptcy

Rule 2004 with the discovery procedure allowed under the Federal Rules of Civil Procedure once

an adversary proceeding or contested matter is commenced).

## II

The following facts are not in dispute.  The Defendant is a licensed insurance agent, holding

licenses in the areas of property and casualty insurance and in life and health insurance from the

State of Tennessee since 1997.  PLF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 1; OLIVER RULE 2004 TR.

at p.10, line 19 - p. 11, line 8.  He has, in addition, owned real property investments in Knox, Blount,

and Sevier Counties since 2002, and on June 14, 2004, he established Conlogue-Oliver-Householder

Quality Properties, LLC, a limited liability company organized under the State of Tennessee, in order

to hold and operate some of his real estate investments.  PLF.'S STMT. OF MAT. UNDISP. FACTS at

¶¶ 3, 5; ROBERTS AFF. at ¶ 6, EX. D, EX. H; OLIVER RULE 2004 TR. at p.22, lines 2-6.  Due to these

activities, the Defendant became knowledgeable about the purchase and financing of real property.

PLF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 4.

Since 2000, the Defendant has been in a relationship and cohabitated with his life partner,

Aaron Householder.  DEF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 3; OLIVER AFF. at ¶ 4.  Throughout

that time, the Defendant has been the primary or sole source of maintenance and support for Mr.

Householder, who cannot earn a living due to emotional and other problems, and has paid virtually

11

all of Mr. Householder's living expenses, including all mortgage payments on the residence located at 9844 Kristi Drive, Knoxville, Tennessee (Kristi Drive Residence) where the Defendant and Mr. Householder have resided since the purchase of that property in 2004, all payments for the lease and subsequent purchase of a BMW automobile for Mr. Householder, and his insurance expenses. DEF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 4, 6, 11-12; PLF.'S STMT. OF MAT. UNDISP. FACTS at ¶¶ 7, 11, 21, 26; OLIVER AFF. at ¶ 5, 10-11. Mr. Householder refinanced the Kristi Drive Residence, which was titled in the name of the Defendant, in November 2007, but the Defendant continued making the monthly payments by writing a check to Mr. Householder, which he denoted as "rent," although there is no lease agreement between the Defendant and Mr. Householder concerning the Kristi Drive Residence. PLF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 36; OLIVER AFF. at ¶¶ 6, 9. The Defendant has also made payments directly to Countrywide for the mortgage obligation: on January 16, 2008, in the amount of $1,426.26, and on August 13, 2008, in the amount of $1,489.43. PLF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 26; ROBERTS AFF. at Ex. E.

The Defendant filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on April 25, 2008, and the Plaintiff was appointed trustee. DEF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 1; OLIVER AFF. at ¶ 2; ROBERTS AFF. at ¶ 2. Listed within the Defendant's statements and schedules were monthly expenses of $1,450.00 for rent or mortgage, $717.00 for vehicle expenses on the BMW, and $1,246.00 for Mr. Householder's expenses, although the Defendant did not separately list in his Schedule J the expenses paid directly for the benefit of both himself and Mr. Householder. DEF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 8, 12-15; COLL. EX. A TO MOT. FOR SUMM. JUDG.; OLIVER AFF. at ¶¶ 7, 12, 15. In the ninety days preceding his bankruptcy filing, the Defendant's

payments on the mortgage obligation did not exceed $5,475.00, and he disclosed in his statements and schedules payments totaling $2,100.00 for the BMW in that time period. DEF.'S STMT. OF MAT. UNDISP. FACTS at ¶¶ 9, 14.

At his meeting of creditors, held on May 23, 2008, the Defendant testified that he did not know who held the mortgage on the Kristi Drive Residence and that he usually writes a check for approximately $1,470.00 each month to Mr. Householder, who makes the household bill payments, and he gives Mr. Householder cash to buy food. PLF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 30; OLIVER AFF. at ¶ 7; ROBERTS AFF. at Ex. B, p.2, lines 23-25; p.3, lines 9-22. Also during the meeting of creditors, the Defendant received a letter from the Plaintiff requesting that any omissions to his statements and schedules be amended, but he has not filed any amendments to the statements and schedules he filed on April 25, 2008, which he attested at his meeting of creditors were true and correct. COLL. EX. A TO MOT. FOR SUMM. JUDG.; DEF.'S STMT. OF MAT. UNDISP. FACTS at ¶ 2; PLF.'S STMT. OF MAT. UNDISP. FACTS at ¶¶ 27-29; OLIVER AFF. at ¶ 3; ROBERTS AFF. at ¶ 3, EX. A, EX. B, p.1, lines 10-12.

The Plaintiff filed the Complaint initiating this adversary proceeding on September 22, 2008, objecting to the Defendant's discharge for (1) knowingly and fraudulently making false oaths by failing to disclose regular and significant monthly payments to Mr. Householder and a closed joint bank account in his Statement of Financial Affairs, by failing to disclose that the monthly mortgage or rental payments of $1,450.00 did not include real estate taxes and homeowners insurance, by listing the monthly automobile expense for Mr. Householder, by failing to disclose that the expenses listed in Schedule J also included costs for Mr. Householder, and by falsely testifying at his meeting

of creditors that he did not know that Mr. Householder's mortgage obligation was with Countrywide; and (2) transferring and concealing property of the estate, with the intent to hinder, delay, or defraud creditors, within one year of the date his petition was filed by making these significant payments to, on behalf of, and for the benefit of Mr. Householder.  COMPL. at ¶¶ 6-7.  The Defendant filed his Motion for Summary Judgment on November 6, 2008, arguing that there are no genuine issues of material fact, that he is entitled to judgment as a matter of law, and that the Plaintiff's Complaint should be dismissed and the Defendant's discharge granted.

### III

Chapter 7 debtors receive a general discharge of all pre-petition debts under 11 U.S.C. § 727, which provides that "[t]he court shall grant the debtor a discharge" unless one of ten express limitations exists, including the following:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

. . . .

(4) the debtor knowing and fraudulently, in or in connection with the case—

(A) made a false oath or account[.]

14

11 U.S.C. § 727(a).[5] These limitations furnish creditors with "a vehicle under which *abusive* debtor

conduct can be dealt with by denial of discharge." *Blockman v. Becker (In re Becker)*, 74 B.R. 233,

236 (Bankr. E.D. Tenn. 1987) (quoting *Harman v. Brown* (*In re Brown*), 56 B.R. 63, 66 (Bankr.

D.N.H. 1985)).  Section 727(a) is liberally construed in favor of the debtor, and the party objecting

to discharge bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re*

*Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); Fed. R. Bankr. P. 4005.

**IV**

**§ 727(a)(4)(A)**

The Plaintiff first objects to the Defendant's discharge for making false oaths, alleging at

paragraph 6 of the Complaint that the following constitute false oaths made by the Defendant in

response to questions in his Statement of Financial Affairs:

> a.  As to questions 7 and 10 of the Statement of Financial Affairs the debtor did not
> disclose regular and significant transfers of cash and/or other assets to Aaron
> Householder on a monthly (or other) basis of:
>
> > i) payment of the mortgage indebtedness owing by Aaron Householder to
> > Countrywide Home Loan in the approximate amount of $1,426.26 beginning
> > January 1, 2008, and continuing until the date of filing (and thereafter);
> >
> > ii) payment of certain mortgage indebtedness owing to CitiMortgage by the
> > debtor owed on property owned by Aaron Householder, after it was
> > quitclaimed by the debtor to Aaron Householder on or about April 4, 2005,
> > and on or about March 10, 2006.  From and after March 10, 2006, to
> > December 31, 2007, the payment by the debtor of the CitiMortgage debt for
> > the benefit of Aaron Householder was not disclosed;

---

[5]  The Chapter 7 discharge relieves "honest but unfortunate" debtors of their debts and allows them a "fresh
start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003)
(quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))).

iii) payment of the BMW automobile indebtedness to or for the benefit of Aaron Householder in the approximate amount of $700.00 month [sic] in the year preceding the filing of the bankruptcy petition;

iv) the transfer of other funds to or for the benefit of Aaron Householder, including but not limited, to payment of his automobile insurance, his health insurance premiums, his other unpaid medical bills not covered by insurance, the utilities for the house in the name of Aaron Householder, and other expenses on a monthly (or other) basis in the year preceding the filing of bankruptcy.

b. As to question 11 of the Statement of Financial Affairs, the debtor did not disclose the closing of a joint bank account in the joint names of the debtor and Aaron Householder which was maintained at SunTrust Bank, . . . which was closed in January, 2008.

COMPL. at ¶ 6.

Denial of discharge under § 727(a)(4) requires the Plaintiff to prove that the Defendant made a statement under oath which was false, that the Defendant knew that the statement was false when he made it, that he made the statement with fraudulent intent, and that the statement related materially to his bankruptcy case. 11 U.S.C. § 727(a)(4)(A); *Keeney*, 227 F.3d at 685. Both affirmative false statements and omissions fall within the scope of § 727(a)(4)(A), *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), and statements are material if related to a debtor's business enterprises or transactions, his bankruptcy estate, the discovery of assets, and/or the existence and disposition of property, as are matters pertinent to the discovery of assets. *Keeney*, 227 F.3d at 686; *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992). Bankruptcy statements and schedules are executed under oath and penalty of perjury, as are statements and testimony given by a debtor at his meeting of creditors, by a deponent in a deposition,

16

and/or by a witness in a 2004 examination.  *Ayers v. Babb (In re Babb)*, 358 B.R. 343, 355 (Bankr. E.D. Tenn. 2006).

"The elements of 'knowingly' and 'fraudulently' may not be conflated.  They each must be proven."  *Abbey v. Retz (In re Retz)*, 364 B.R. 742, 754 (Bankr. D. Mont. 2007).  "Knowledge that a statement is false can be evidenced by a demonstration that the debtor 'knew the truth, but nonetheless failed to give the information or gave contradictory information.'"  *Babb*, 358 B.R. at 355 (quoting *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999)).  Fraudulent intent is often discerned from a debtor's conduct, demonstrated by material representations or omissions that the debtor knows are false and are likely to create an erroneous impression, as well as reckless disregard or indifference for the truth exhibited by continuing patterns of omissions and/or false statements in his bankruptcy schedules.  *Keeney*, 227 F.3d at 685; *Babb*, 358 B.R. at 355.

On the other hand, "[a] false statement resulting from ignorance or carelessness does not rise to the level of 'knowing and fraudulent.'"  *Retz*, 364 B.R. at 754 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 884 (B.A.P. 9th Cir. 2005)).  Additionally, "it is well established that a court may consider the debtor's subsequent voluntary disclosure as evidence of innocent intent[,]" *Kelly*, 135 B.R. at 461, and a debtor who mistakenly or inadvertently provides false information or fails to disclose pertinent information and takes steps to amend his schedules to correct them prior to or during a meeting of creditors is not generally thought to possess the requisite fraudulent intent to deny discharge under § 727(a)(4)(A).  *Keeney*, 227 F.3d at 686; *Babb*, 358 B.R. at 355-56.

17

## A

## Complaint at ¶ 6.a.

The Complaint first raises issues concerning the Defendant's marking of "None" in response to Question 7 to the Statement of Financial Affairs, which reads, in material part:

7. Gifts

List all gifts . . . made within one year immediately preceding the commencement of this case, except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member . . .[.]

COLL. EX. A. TO MOT. FOR SUMM. JUDG.  Based upon the inferences made in the Complaint, it appears that the Plaintiff believes that the payments made by the Defendant to or for the benefit of Mr. Householder were gifts and should have been disclosed as such.  The court disagrees and finds that there are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law with respect to his answer to Question 7 of his Statement of Financial Affairs.

The record is clear that the Defendant and Mr. Householder have been in a long-term relationship since 2000, and that they have shared the Kristi Drive Residence as their home since its purchase in 2004.  OLIVER AFF. at ¶¶ 4, 6.  The record is equally clear, and the Defendant does not dispute, that he has regularly paid the household bills for the himself and Mr. Householder, and he discloses this information in his Schedule J - Current Expenditures of Individual Debtor(s) and in his Affidavit.  COLL. EX. A TO MOT. FOR SUMM. JUDG.; OLIVER AFF. at ¶¶ 5, 7, 12, 15.  The Defendant also does not dispute that he made payments totaling $3,563.62 directly to BMW for the vehicle driven exclusively by Mr. Householder, although the Defendant is a co-signer on the debt, information which is likewise disclosed in his Statement of Financial Affairs at question 3b, his

18

Schedule B - Personal Property at question 25, and his Schedule J, and is reiterated in his Affidavit. COLL. EX. A TO MOT. FOR SUMM. JUDG.; OLIVER AFF. at ¶¶ 10-13. Finally, the Defendant has not disputed that, between December 2007 and April 2008, he made payments totaling $7,162.52 on the mortgage encumbering the Kristi Drive Residence, information which is likewise disclosed in his Affidavit. OLIVER AFF. at ¶¶ 6-9.

The payment of household bills by the Defendant to and for the benefit of his life-partner are not gifts as contemplated by the Bankruptcy Code. "Under both legal and non-legal definitions, a 'gift' is something for which the giver receives nothing in return." *Watson v. Boyaijan (In re Watson)*, 309 B.R. 652, 662 (B.A.P. 1st Cir. 2004); *accord Massey v. Pemberton*, 54 Tenn. App. 342, 351 (Tenn. Ct. App. 1964) ("A gift has been judicially defined as a voluntary transfer of property by one to another, without any consideration or compensation therefor."); BLACK'S LAW DICTIONARY 688 (6th ed. 1994) (defining "gift" as "[a] voluntary transfer of property to another made gratuitously and without consideration."). Under Tennessee law, "the rule with reference to gifts inter vivos . . . is that intention to give and delivery of the subject of the gift must clearly appear[ and d]oubts must be resolved against the gift. There is no delivery unless the complete dominion and control of the gift is surrendered by the donor and acquired by the donee." *Pamplin v. Satterfield*, 265 S.W.2d 886, 888 (Tenn. 1954); *see also Brown v. Vinson*, 216 S.W.2d 748, 749 (Tenn. 1949) ("A gift *inter vivos* is not effective unless the complete dominion and control of the gift is surrendered by the donor and acquired by the donee.").

Here, the payment of their joint household expenses, whether directly to the creditors or to Mr. Householder in order for him to pay creditors, was not gratuitous and without consideration.

19

These payments have benefitted not only Mr. Householder but also the Defendant, as a member of their joint household, just as he receives a direct benefit by making the mortgage payments on the Kristi Drive Residence, the house in which he and Mr. Householder live. With respect to the BMW, while the Defendant acknowledges that it is driven solely by Mr. Householder and is titled in his name, the Defendant is a co-signer on the loan, and his failure to pay the monthly expense, knowing that Mr. Householder cannot afford to, would be detrimental to him as well as result in repossession of the vehicle.

Additionally, the Defendant clearly disclosed these monthly payments in his schedules, not listing them as gifts upon the advice of his counsel.

> Reliance on an attorney's advice may excuse acts that otherwise bear indicia of fraud. *In re Sendecky*, 283 B.R. 760, 765 (B.A.P. 8th Cir. 2002). This affirmative defense may prevent a finding of actual fraud if the advice if reasonable and the attorney was fully informed before giving it. *In re Markey*, 378 B.R. 594, 604 (Bankr. D. Minn. 2007). When fraudulent intent is an issue, advice of counsel is a factor to be considered unless the party should know that failure to disclose an asset is forbidden by law. *In re Patterson*, 70 B.R. 124, 128 (Bankr. W.D. Mo. 1986).

*United States Tr. v. Ovel (In re Ovel)*, 2008 Bankr. LEXIS 3286, at *11, 2008 WL 5111340, at *4 (Bankr. N.D. Iowa Dec. 3, 2008); *see also Dains v. Dains (In re Dains)*, 384 B.R. 241, 253 (Bankr. W.D. Mo. 2008) ("Mistaken reliance on an attorney's advice will excuse acts of fraudulent intent if the advice was reasonable and the attorney was aware of all relevant facts." (citations omitted)).

The Defendant's attorney, Ms. Brooks, in her Affidavit, testified that after discussing all of the transactions concerning the mortgage payments, the BMW payments, and all expense payments, "in supervising the preparation of [the Defendant's] bankruptcy schedules," she made the determination regarding "what information would be properly responsive in the statement of

20

financial affairs and the bankruptcy schedules[,]" and, based upon her twenty years of practice, thirteen of which have been focused on debtor representation, she "determined that Schedule J was the appropriate place to disclose the Kristi Drive house payment . . . [and] the BMW payment." BROOKS AFF. at ¶¶ 3-7. Specifically with respect to the allegations that the Defendant did not list the bills and expenses as gifts, Ms. Brooks stated the following:

> 9. I would never consider reporting a debtor's ongoing, routine payments of their non-debtor spouse's or heterosexual co-habitant's bills in response to question[] 7 . . . of the statement of financial affairs as . . . gifts. I did not consider reporting Mr. Oliver's payments on behalf of his life-partner any differently.
>
> 10. I determined that Schedule H is the appropriate place to disclose debts co-signed with Aaron Householder and question three of the statement of financial affairs is the appropriate place to disclose bill payments if in excess [of] the 90 day threshold.
>
> 11. I would never consider reporting ongoing payments for the maintenance and support of the debtor's spouse or heterosexual co-habitant in response to question[] 7 . . . of the statement of financial affairs as . . . gifts. I did not consider reporting Mr. Oliver's support of his life-partner any differently.
>
> 12. I determined that Schedules I and J were the appropriate place to disclose the ongoing maintenance and support of Aaron Householder and his contribution to the household budget.

BROOKS AFF. at ¶¶ 9-12. The court finds this explanation by Ms. Brooks not only plausible but entirely reasonable and sufficient to negate any potential finding of fact that the Defendant knowingly and fraudulently made a false oath by marking "None" in answer to Question 7 of his Statement of Financial Affairs.

Even viewing the facts in a light most favorable to the Plaintiff, based upon the record, primarily the disclosures made in his Schedules I and J, as well as the Affidavits of the Defendant and his attorney, Ms. Brooks, the court cannot discern any genuine issue of material fact to preclude

entry of judgment as a matter of law in favor of the Defendant with respect to that portion of the

Plaintiff's § 727(a)(4)(A) allegations concerning the Defendant's answer to Question 7 of the

Statement of Financial Affairs.

Similarly, the Plaintiff contends that the Defendant's answer of "None" to Question 10 of his

Statement of Financial Affairs was a false oath to justify denial of his discharge under § 727(a)(4).

Question 10 to the Statement of Financial Affairs states, in material part, the following:

> 10.  Other transfers
>
> a.  List all other property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of the case.

COLL. EX. A TO MOT. SUMM. JUDG.  As with the question of whether the payment of the household

expenses and/or payments made for debts technically owed by Mr. Householder, the court again

finds that there is no genuine issue of material fact, and the Defendant is entitled to judgment as a

matter of law.

"Congress intended the term 'transfer' to be as broad as possible and, therefore, defined the

term expansively in the Bankruptcy Code."  *Ford v. Skovich (In re Skovich)*, 337 B.R. 441, 445

(D.N.H. 2006).  Under the Bankruptcy Code, "transfer" is defined as "(A) the creation of a lien; (B)

the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or

(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of

or parting with (i) property; or (ii) an interest in property."  11 U.S.C. § 101(54) (2006).  "The

definition of transfer focuses on what the debtor relinquished[,] not the formalities of the

22

documentation." *Rosen v. MIF Realty, L.P. (In re Vuckovic)*, 211 B.R. 1002, 1005 (Bankr. M.D. Fla. 1997) (stating that "almost every business transaction constitutes a transfer.").

Under this definition, practically all methods of disposing of property qualifies as a "transfer" and "would certainly encompass the debtor's act of spending the funds [he] received for personal expenses." *Silver Care Ctr. v. Parks (In re Parks)*, 2007 Bankr. LEXIS 2372, at *26, 2007 WL 2033380, at *8 (Bankr. D.N.J. July 10, 2007). Nevertheless, Question 10 to the Statement of Financial Affairs expressly excludes "property transferred in the ordinary course of the business or financial affairs of the debtor[.]" COLL. EX. A TO MOT. FOR SUMM. JUDG. As previously discussed, the Defendant's payment of his and Mr. Householder's living expenses occurred in what could only be viewed as the "ordinary financial affairs" of this debtor since it is undisputed that he has been the primary financial support of their household since 2000. Furthermore, there is nothing in the record to evidence any intent to hinder, delay, or defraud creditors by making these payments, irrespective that he gave a portion of the money for these payments directly to Mr. Householder in order that he could make the requisite payments on behalf of the household.

Furthermore, as with the analysis for Question 7, Ms. Brooks gave the following explanations concerning the Defendant's answer to Question 10:

> 6. I determined that Schedule J was the appropriate place to disclose the Kristi Drive house payment. In my 20 years of practice I have never disclosed an ongoing payment on a house note or payment of rent, whether it is the debtor's obligation or to a parent or commercial third party, in response to question 10 of the statement of financial affairs. In my professional opinion the standard of practice among debtor's [sic] attorneys in East Tennessee is to disclose such information in response to question three of the statement of financial affairs if it exceeds the threshold set forth in [sic] therein and on schedule J.

. . . .

9.  I would never consider reporting a debtor's ongoing, routine payments of their non-debtor spouse's or heterosexual co-habitant's bills in response to question[] . . . 10 of the statement of financial affairs as transfers outside the ordinary course of business . . . . I did not consider reporting Mr. Oliver's payments on behalf of his life-partner any differently.

10.  I determined that Schedule H is the appropriate place to disclose debts co-signed with Aaron Householder and question three of the statement of financial affairs is the appropriate place to disclose bill payments if in excess [of] the 90 day threshold.

11.  I would never consider reporting ongoing payments for the maintenance and support of the debtor's spouse or heterosexual co-habitant in response to question[] . . . 10 of the statement of financial affairs as transfers outside the ordinary course of business . . . . I did not consider reporting Mr. Oliver's support of his life-partner any differently.

12.  I determined that Schedules I and J were the appropriate place to disclose the ongoing maintenance and support of Aaron Householder and his contribution to the household budget.

13.  In gathering information I consider responsive to question 10 of the statement of financial affairs, I always ask my clients whether they have given away, sold, refinanced or in any way disposed of anything worth more than $600.00 in the past two years.

14.  In preparing David Oliver's schedules I did not consider any of the payments of which David Roberts complains to be responsive to that question.

BROOKS AFF. at ¶¶ 6, 9-14.

As previously determined with respect to the Defendant's answer to Question 7, the court finds that there are no genuine issues of material fact and that the Defendant did not knowingly and fraudulently make a false oath with respect to his answer to Question 10 of his Statement of Financial Affairs, and the Defendant is entitled to judgment as a matter of law.

24

**B**

**Complaint at ¶ 6.b.**

The Plaintiff also avers that the Defendant's failure to disclose in answer to Question 11 of the Statement of Financial Affairs the closing of a joint bank account he held with Mr. Householder constituted a false oath justifying the denial of the Defendant's discharge under §727(a)(4)(A). There is no dispute that the Defendant answered "None" to Question 11, which requires a debtor to list "all financial accounts . . . held in the name of the debtor or for the benefit of the debtor which were closed . . . within one year immediately preceding the commencement of the case[, including] checking, savings, or other financial accounts," although, by his own admission, the Defendant did not list a joint bank account with Mr. Householder which was closed in January 2008.  COLL. EX. A TO MOT. SUMM. JUDG.; OLIVER AFF. at ¶ 16.  Despite this, the Defendant testified in his Affidavit that "I reviewed and signed the bankruptcy statements and schedules under oath that are filed and constitute part of the record in my case.  The information contained in these statements and schedules is, with the exception of an understatement of the amount paid Betty K. Reynolds within 90 days in response to question 3 of the statement of financial affairs, to the best of my knowledge a true and accurate response to all information requested."  OLIVER AFF. at ¶ 3.

The Defendant has not amended his Statement of Financial Affairs to correct this information.  PLF.'S STMT. OF UNDISP. FACTS at ¶ 28; ROBERTS AFF. at Ex. C.  Additionally, while there is no dispute that the Defendant had a joint bank account with Mr. Householder until January 2008, the facts are in dispute as to where this bank account was located.  The Complaint avers that the Defendant failed to disclose an account with SunTrust Bank, a statement the Plaintiff again

25

makes in his Statement of Additional Undisputed Material Facts, which was not disputed by the Defendant.  COMPL. at ¶ 6.b.; PLF.'S STMT. OF UNDISP. FACTS at ¶¶ 24-25.  In his Affidavit, the Defendant states that "I inadvertently failed to disclose in my bankruptcy schedules the fact that Aaron and I closed a joint bank account with First Tennessee Bank.  This may have been because I simultaneously opened another account with First Tennessee Bank."  OLIVER AFF. at ¶ 16.

These inconsistent statements give rise to questions of whether there are more than one closed joint account and/or individual account which have not been disclosed.  Because information concerning financial accounts qualifies as a material fact and there are questions as to the Defendant's intent in failing to disclose the closed joint account he held with Mr. Householder until January 2008, as well as questions concerning the bank account itself, he is not entitled to judgment as a matter of law and the Motion for Summary Judgment shall be denied with respect to this portion of the Plaintiff's § 727(a)(4)(A) allegations.

## C

### Complaint at ¶ 6.c.

The Plaintiff additionally objects to the Defendant's discharge, averring that the following statements in his Schedule J were false oaths:

c.  Schedule J of the debtor's bankruptcy schedules was false in that it indicated that:

i) the debtor has a Rent or Home Mortgage payment in the amount of $1,450.00;

ii) the debtor indicated that the Rent or Home Mortgage payment in the amount of $1,450.00 did not include any funds for real estate taxes and

26

property insurance coverage, when in fact, it did include funds for those things in the figure stated;

iii) the debtor has a vehicle payment in the amount of $717.00, but the payment in fact was for a vehicle not used by the debtor but used by Aaron Householder;

iv) the debtor listed other expenses in lines 2 - 9 of Schedule J that included costs not only for the debtor, but also Aaron Householder, which is not disclosed in Schedule J.

COMPL. at ¶ 6.

The bulk of the Plaintiff's averments with respect to Schedule J center around the fact that the Defendant pays the monthly household expenses for himself and Mr. Householder, which the Plaintiff claims has not been properly disclosed or stated. The court will not repeat its earlier findings concerning the payments made by the Defendant for the mortgage and vehicle obligations, other than to reiterate that his payments of the mortgage for the house in which he resides and for the vehicle on which he co-signed the debt are normal, household expenses. He is personally obligated on the note for the BMW, irrespective of the fact that he does not drive the vehicle, and it is immaterial that he is not personally obligated on the mortgage; if the mortgage debt is not paid, the residence will be foreclosed, and he, as well as Mr. Householder, will be forced to find another place to live. The placement of these expenses on Schedule J was determined by the Defendant's attorney to be an accurate response and disclosure, *see* BROOKS AFF. at ¶¶ 4-7, and the court finds that they are not false oaths within the scope of § 727(a)(4)(A).

This finding applies, likewise, to other household expenses listed on Schedule J in lines 2 through 9 for utilities, home maintenance, food, clothing, laundry and dry cleaning, medical and

Main Document    Page 28 of 33

dental expenses, transportation, and recreation for the same reasons.  In his Affidavit, the Defendant addresses this issue as follows:

> I did not list separately in schedule J those expenses which I pay directly for the benefit of both myself and my life partner such as utilities, insurance, food and transportation.  However, I did accurately list those expenses.  I did provide a line item of $1246.00 which is the estimated amount I expend for Aaron Householder's support and maintenance each month.

OLIVER AFF. at ¶ 15.  A review of the Defendant's Schedule J confirms this statement, as does a review of his Schedule I evidencing "Other monthly income" in the amount of $200.00 "From partner."  COLL. EX. A TO MOT. SUMM. JUDG.  Ms. Brooks, in her Affidavit, states that she was the one who "determined that Schedules I and J were the appropriate place to disclose the ongoing maintenance and support of Aaron Householder and his contribution to the household budget."  BROOKS AFF. at ¶ 12.  Based upon this undisputed testimony and the disclosures contained in Schedules I and J, the court can easily discern a lack of fraudulent intent in the Defendant's choice to list his expenses as he did, and they are, therefore, not false oaths as contemplated by § 727(a)(4)(A).

The Plaintiff's final contention concerning Schedule J focuses upon the fact that it evidences that the monthly mortgage payment made by the Defendant did not include property taxes and property insurance when it does, in fact, include those escrowed amounts.  The Defendant did not address this issue in his Affidavit, but he submitted into evidence the Affidavit of Mariah Byrd, paralegal to Ms. Brooks, who stated the following:

> 3. As part of my duties and under the supervision of Brenda Brooks, I enter the data provided me by the client in preparation of their bankruptcy statements and schedules.  I entered the data provided to me by David Oliver.

4.  Mr. Oliver never expressed to me whether the $1450.00 entered on Schedule J line item "mortgage or rent" included taxes and insurance and I never asked him to clarify that line item.

5.  The computer program that our offices [sic] uses to prepare bankruptcy schedule J defaults to "non-payment of taxes or insurance" whether the line item entry is rent or a mortgage.

6.  Our office routinely files bankruptcies in which the debtor's mortgage includes an escrow payment but the program has defaulted to "non-payment."

7.  Schedule J contains line items for mortgage insurance and a catch-all for taxes and if not-escrowed I typically disclose any these [sic] payments on those line items.

BYRD AFF. at ¶¶ 3-7.

The Plaintiff did not provide any evidence to rebut this testimony, nor did he offer any proof that the Defendant knowingly and fraudulently made a false oath.  Based upon the record, the court finds that there are no genuine issues of material fact with respect to the Defendant's incorrect disclosure on Schedule J that the $1,450.00 mortgage payment did not include the real estate taxes and homeowners insurance, such that the Defendant is entitled to judgment as a matter of law.

## D

## Complaint at ¶ 6.d.

The Plaintiff's final objection under § 727(a)(4)(A) for false oaths is based upon his allegations that "[t]he debtor testified falsely at the 341 meeting of creditors and/or in the Rule 2004 examination concerning his financial affairs, including but not limited to, truthful information concerning the mortgage indebtedness owing by Aaron Householder to CountryWide [sic] and the means of payment of that mortgage indebtedness."  As hereinafter discussed in greater detail, there

are genuine issues of material fact concerning the ownership of the Kristi Drive Residence, and there is inconsistent testimony in the record for this Motion for Summary Judgment concerning payments made on the mortgage and the party to whom those payments were made. *Compare* OLIVER AFF. at ¶ 9 *with* ROBERTS AFF. AT EX. E. Accordingly, there are likewise genuine issues of material fact as to whether the Defendant has testified truthfully concerning the indebtedness owed on the residence such that he is not entitled to judgment as a matter of law, and his Motion for Summary Judgment, with respect to this portion of the Complaint, shall be denied.

## V

## 11 U.S.C. § 727(a)(2)(A)

The Plaintiff also objects to the Defendant's discharge under § 727(a)(2)(A), which consists of two elements: (1) the disposition of property, including transfer or concealment, within one year of filing his bankruptcy petition, and (2) the Defendant's subjective intent to hinder, delay, or defraud creditors by disposing of his property. *Keeney*, 227 F.3d at 683-84. Proof of any of the three: hinder, delay, or defraud, is sufficient to satisfy §727(a)(2)(A); however, proof of actual fraud, as opposed to constructive fraud, is required. *E. Diversified Distrib., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 672 (Bankr. N.D. Ga. 2004); *Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730 (Bankr. S.D. Ohio 1999). Therefore, in order to prevail under this subsection, the Plaintiff must prove that the Defendant possessed an actual intent to deceive, which may be established through circumstantial evidence, including that of the Defendant's conduct, due to the inherent difficulties in proving intent. *Buckeye Retirement Co., LLC v. Heil (In re Heil)*, 289 B.R. 897, 907 (Bankr. E.D. Tenn. 2003).

30

In his Complaint, the Plaintiff argues that the Defendant "transferred to or for the benefit of Aaron Householder, significant property of the debtor, including but not limited to, cash (or other assets) to pay the mortgage indebtedness of Aaron Householder, provided a BMW vehicle to Aaron Householder, and other good and valuable benefits paid to or for the benefit of Aaron Householder in order to hinder, delay and defraud his creditors[,]" and has attempted to conceal these payments from the trustee and/or his creditors. COMPL. at ¶ 7.  Based upon the record and for the reasons previously stated with respect to those similar arguments under §727(a)(4)(A), the court disagrees and finds that the Defendant transferred property and funds to and on behalf of Mr. Householder as a routine practice within their joint household and without any intent to hinder, delay, and defraud creditors, and the Motion for Summary Judgment with respect to that aspect of the Plaintiff's arguments under §727(a)(2)(A) will be granted.

Nevertheless, the court will not dismiss the § 727(a)(2)(A) count in its entirety, as it finds that a genuine issue as to material facts exists with respect to the transfer of the Kristi Drive Residence from the Defendant to Mr. Householder by quit claim deed.  In the Plaintiff's Statement of Additional Undisputed Material Facts, he avers that the Defendant executed a quit claim deed transferring the residence to Mr. Householder on March 8, 2006.  PLF.'S STMT. OF UNDISP. FACTS at ¶ 9.  However, in his Affidavit, the Defendant states that "[o]n March 8, 2008[,] I signed a quitclaim deed to Aaron."  OLIVER AFF. at ¶ 6.  These inconsistencies evidence a genuine issue of material fact.  If the Defendant did, in fact, quit claim the Kristi Drive Residence to Mr. Householder in March 2008, one month prior to the filing of his bankruptcy case, the transfer falls within the one-year statutory period, raising additional issues as to his intent, and the Motion for Summary

31

Judgment shall be denied with respect to the Plaintiff's averments under § 727(a)(2)(A) not expressly addressed in this memorandum opinion.[6]

**VI**

In summary, the court finds that there are no genuine issues of material fact with respect to the Plaintiff's averments of false oaths under §727(a)(4)(A) concerning questions 7 and 10 of the Defendant's Statement of Financial Affairs or concerning the disclosures he made on Schedule J. The court also finds that there are no genuine issues of material fact with respect to the Plaintiff's § 727(a)(2)(A) averments as they relate to household expenses paid by the Defendant to and on behalf of Mr. Householder, and the Defendant is entitled to judgment as a matter of law. Accordingly, the Complaint shall be dismissed with respect to those aspects.

With respect to the Plaintiff's averments concerning false oaths under § 727(a)(4)(A) due to the Defendant's failure to disclose a closed joint bank account as required by question 11 of the Statement of Financial Affairs and the allegations that he did not testify truthfully at his 341 meeting and/or his Rule 2004 examination concerning his financial affairs as they relate to the Kristi Drive Residence, the court finds that genuine issues of material fact do exist, and the Motion for Summary Judgment shall be denied. Likewise, there are genuine issues of material fact with respect to whether the Defendant transferred the Kristi Drive Residence to Mr. Householder via quit claim deed within the one-year statutory period, and the Plaintiff's action shall proceed with respect to those issues.

---

[6] There are also inconsistencies within the record concerning whether the Defendant originally purchased the Kristi Drive Residence in 2001, as stated by the Plaintiff at paragraph 6 of his Statement of Additional Undisputed Material Facts, or in 2004, as stated by the Defendant at paragraph 6 of his Affidavit. Nevertheless, this fact is immaterial for the purposes of summary judgment.

An order consistent with this Memorandum will be entered.

FILED: May 22, 2009

BY THE COURT

*/s/ RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE